Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 1 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 1 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 44 of 75

Keith M. Brandofino (KB 2128)
Eric J. Berardi (appearing *pro hac vice*)
Tamara A. Daniels (TD 6505)
Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY  10036-7703
Phone: (212) 775-8700
Fax:    (212) 775-8800
Attorneys for Plaintiff

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ____6|5|12____

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF GS MORTGAGE SECURITIES CORPORATION II, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-GG6, acting by and through Torchlight Loan Services, LLC as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2006, | CIVIL ACTION FILE NO. 12 Civ. 0423 |

Plaintiff,

-against-

NESBITT BELLEVUE PROPERTY LLC, NESBITT BLUE ASH PROPERTY LLC, NESBITT COLORADO SPRINGS PROPERTY LLC, NESBITT DENVER PROPERTY LLC, NESBITT LIVONIA PROPERTY LLC, NESBITT LYNNWOOD PROPERTY LLC, NESBITT PORTLAND PROPERTY LLC, and NESBITT EL PASO PROPERTY L.P.,

Defendants.

## ORDER APPOINTING RECEIVER

THIS MATTER is before the Court on Plaintiff's Motion for the Appointment of

a Receiver and Injunctive Relief brought on by order to show cause dated January 20, 2012.

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 2 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 2 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 45 of 75

Upon review of the motion and the Complaint for Appointment of a Receiver (the "*Complaint*") *and having considered the evidence at the authentication hearing held on May 8, 2012,* and for good cause shown, the Court FINDS as follows:

That jurisdiction is proper under 28 U.S.C. § 1332, that each of Defendants received notice of Plaintiff's Motion for the Appointment of a Receiver, that Defendants are in default of their obligations under the Loan (as defined herein) as a result of, inter alia, their failure to satisfy their obligations on the maturity date, Plaintiff's Complaint against Defendants demonstrates grounds for the appointment of a receiver of, inter alia, eight parcels of land located in six states and operated as hotels under the "Embassy Suites" franchise, and that immediate and irreparable injury may result in the event a receiver is not appointed. The Court therefore grants the *appointment of a Receiver as* requested in the Complaint.

IT IS HEREBY ORDERED that Alan Tantleff of FTI Consulting, Inc., a Maryland corporation, maintaining an office at 3 Times Square, 9th Floor, New York, New York 10036 (hereinafter, the "*Receiver*"), be and hereby is appointed as the receiver of Defendants' Assets (as defined herein).

IT IS FURTHER ORDERED that:

1.     The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the respective Defendants (collectively, "*Defendants' Assets*"):

(a)     Certain real property and improvements and personal property thereon located at (i) 7290 Commerce Center Drive, Colorado Springs, Colorado and commonly known as "Embassy Suites Colorado Springs", (ii) 7525 East Hampden Avenue, Denver, Colorado, commonly known as "Embassy Suites Denver Southeast", (iii) 4554 Lake Forest Drive, Blue Ash, Ohio, commonly known as "Embassy Suites Cincinnati – Northeast (Blue

2

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 3 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 3 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 46 of 75

Ash)", (iv) 9000 SW Washington Square Road, Tigard, Oregon, commonly known as "Embassy
Suites Portland – Washington Square", (v) 19525 Victor Parkway, Livonia, Michigan,
commonly known as "Embassy Suites Detroit – Livonia/Novi", (vi) 6100 Gateway East, El Paso,
Texas, commonly known as "Embassy Suites El Paso", (vii) 20610 44th Avenue West,
Lynnwood, Washington, commonly known as "Embassy Suites Seattle – North/Lynnwood" and
(viii) 3225 158th Avenue SE, Bellevue, Washington, commonly known as "Embassy Suites
Seattle – Bellevue", each as more particularly described on **Exhibit A** attached hereto in the
order described herein (collectively, the "*Premises*");

(b)  All documents, instruments, agreements, information and materials
*belonging to any of the respective Defendants, whether* in Defendants' or their respective agents' possession or control relating to the ownership,
maintenance, repair, replacement, improvement, management, leasing, insuring, marketing,
financing, use, operation, preservation and protection of the Premises, but excluding
communications protected by the attorney-client privilege or work product doctrine (collectively,
the "Project Records"). To the extent that Defendants claim any Project Records, or portion
thereof, are protected by privilege, a privilege log shall be produced to Plaintiff setting forth the
grounds for the privilege asserted and/or claimed and an identification of the document, or
portion thereof, that is being withheld such that the identification itself does not disclose the
privileged information;

(c)  All checking, savings, depository, payroll, vendor, petty cash or
other accounts relating to the Premises and held by or for the benefit of Defendants (collectively,
the "*Project Accounts*");

(d)  All payments, revenues, refunds and other income from, relating to
or derived from the Premises (collectively, the "*Project Income*");

3

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 4 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 4 of 32

Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 47 of 75

(e)   All security, utility, prepayments and other deposits received by *(acting as agents for the Defendants )* Defendants and/or their respective agents and any deposits made by any Defendant to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Premises (collectively, the "*Project Deposits*"); and

(f)   The originals of all leases, subleases, licenses (including, without limitation, all liquor licenses), franchise agreements, vehicle titles and any other agreements in *(they)* ~~Defendants' or their respective agents~~ possession or control relating to the use or occupancy of *of the Defendants or their agents (acting as agents for the Defendants)* the Premises (collectively, the "*Leases*").

2.   Defendants, *and their agents, acting as agents for the defendants,* ~~their respective agents, employees, members, managers,~~ officers and representatives, and any and all other contractors, ~~persons and entities~~ retained, hired or ~~engaged by any Defendant~~ (collectively, the "*Defendant Parties*") are hereby ordered to immediately identify any and all Project Accounts and surrender possession to the Receiver and control of Defendants' Assets, including, without limitation, the Premises, in their possession or subject to their control. *~~To the extent any such property~~* The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Defendants' Assets, including, without limitation, the Premises, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.

3.   Notwithstanding anything in this Order to the contrary, the rents, profits, license, fees, etc. shall continue to be deposited into the "Deposit Account" as defined in and pursuant to the terms of that certain Deposit Account Agreement dated January 9, 2006 executed by Defendants in connection with the $187,500,000 loan made to Defendants on or about January 9, 2006, and currently held by Plaintiff (the "*Loan*").

4

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 5 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 5 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 48 of 75

4.      All funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Loan pursuant to the terms of all documents, instruments and agreements evidencing, securing or relating to the Loan (collectively, the "*Loan Documents*") and, subject to paragraph 10 of this Order, shall be paid to Plaintiff upon the termination of the receivership created by this Order if and to the extent all debt and other amounts outstanding under the Loan Documents have not been repaid in full.

5.      Subject to paragraph 3 above, the Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and any such financial institution and any other persons in active concert or participation with Defendants are hereby authorized to take such steps as are necessary to restrain or prevent Defendants from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to immediately turn over all funds in the Project Accounts to the Receiver. Any financial institution maintaining Project Accounts is authorized to provide to the Receiver a complete listing of account numbers under the name of any Defendant, including accounts previously closed. For each such Project Account the financial institution is authorized to provide the current balance for such account and upon request by the Receiver is authorized to provide monthly bank statements (and details of any such transactions as requested) for a period of up to one year prior to entry of this Order.

6.      Defendants and their respective agents *(acting as agents for the Defendants)* are hereby directed to render to the Receiver and Plaintiff within ten (10) business days after the date of this Order (a) an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Defendants for the benefit of the Premises, all Project Accounts and all Project Deposits for the period beginning from and after January 1, 2012 to the date of this Order; and (b) an itemization of all

5

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 6 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 6 of 32

Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 49 of 75

unpaid bills and other amounts due and payable relating to the Premises, together with all bills, invoices and other writings evidencing or relating thereto.

7.     Subject to paragraph 3 above, the Receiver is authorized and directed to demand, collect and receive from all tenants, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of any Premises (collectively, "*Tenants*") under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder. All Tenants are authorized to pay the Receiver all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.

8.     The Receiver is hereby authorized and directed to lease, rent and license the Premises on such terms and conditions as may be approved in writing by Plaintiff, *with notice to defendants*.

9.     The Receiver is authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order into the Deposit Account in accordance with paragraph 3 above; and (b) to make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for review and inspection by Plaintiff and Defendants.

10.     *Subject to* Notwithstanding anything set forth in the Loan Documents to the contrary, and subject to paragraph 3, the Receiver is authorized and directed to use the Project Income and all other funds and monies coming into the Receiver's hands pursuant to this Order (including disbursements of funds to Receiver from the Deposit Account but excluding Project Deposits) as follows:

6

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 7 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 7 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 50 of 75

(a)     first, to the Receiver toward payment of the Receiver's fees as set forth on **Exhibit B** attached hereto and incorporated herein;

(b)     second, to the reasonable costs and expenses incurred by the Receiver in the performance of the Receiver's duties in accordance with this Order;

(c)     third, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Premises (collectively, "*Project Expenses*") arising from and after the date of this Order reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect the Defendant's Assets in accordance with this Order, provided, however, that while neither the Receiver nor Plaintiff shall have any liability or obligation to any other party to pay any Project Expense which was incurred or became due and payable prior to the date of this Order, the Receiver may pay Project Expenses arising prior to the date of this Order if and only if the Receiver reasonably determines that payment of such Project Expense is necessary for the continued ownership, operation, use, preservation and/or protection of the Premises in accordance with this Order and Plaintiff, in the exercise of its sole discretion, consents in writing to the Receiver utilizing Project Income to pay such Project Expense and provided further, however, that the Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff or further authorization by this Court, and provided further, however, that the Receiver may, upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

(d)     last, all remaining Project Income, funds and monies (collectively, "*Excess Funds*") to Plaintiff for application against the outstanding principal, interest and other

7

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 8 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 8 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 51 of 75

amounts owed by Defendants under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner as is authorized under the Loan Documents.

11.    If the Receiver determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 9(a) through 9(c) of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit, whereupon Plaintiff shall have the right, but not the obligation, to (a) release additional funds from the Deposit Account to satisfy such deficit or (b) if there are insufficient funds in the Deposit Account to satisfy such deficit, advance to the Receiver funds to pay all or any portion of such deficit and any such funds advanced by Plaintiff (i) shall be repaid as an expense of the Receiver in accordance with paragraph 9(b) of this Order and (ii) to the extent not so repaid, shall be deemed an advance to Defendants under the Loan Documents for the protection and preservation of the Premises, shall be added to the outstanding principal amount of the Loan and shall be secured by the security title, security interest, lien and encumbrance of the Loan Documents (including, without limitation, any and all deeds of trust, mortgages, security agreements and assignments of leases and rents executed by any Defendant in connection with the Loan).

12.    The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Premises and the other Defendants' Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Premises.

8

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 9 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 9 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 52 of 75

13.     On or before the twentieth (20th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately proceeding month to the parties concerning the operations, income and expenses of the Premises.

14.     Upon request by Plaintiff, the Receiver is authorized to (a) order appraisals for the Premises, (b) list or otherwise advertise the Defendants' Assets for sale with a national brokerage firm approved by Plaintiff on terms and conditions approved by Plaintiff, and (c) solicit offers to purchase the Defendants' Assets. Plaintiff shall be permitted, from time to time, to contact such brokerage firm and any party or parties which may have an interest in purchasing the Defendants' Assets or which have made any proposal to purchase the Defendants' Assets and to discuss and negotiate the terms of such offer provided that Plaintiff shall report the nature and content of such discussions and negotiations to the Receiver periodically, and no such contact, discussion or negotiation with such party or parties shall render or cause or shall be deemed to render or cause Plaintiff to be a mortgagee in possession of the Defendants' Assets or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise. Upon request by Plaintiff, the Receiver shall file a motion (and seek a hearing on an expedited or emergency basis on such motion) for permission to sell the Defendants' Assets in accordance with the applicable provisions of 28 U.S.C. § 2001 and 2004. Any response or opposition to such motion must be filed within ten (10) days after the motion is filed. ~~If the~~ The Terms of any such sale are subject to further order of ~~Court determines that appropriate circumstances exist for selling the Defendants' Assets, the~~ the Court ~~Court may enter an order authorizing and directing the Receiver to sell the~~ Defendants' Assets or such portion thereof on the terms set forth in the Court's order, or as are acceptable and approved in writing prior to such sale by Plaintiff if there is no opposition to the motion. The Premises and

9

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 10 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 10 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 53 of 75

the other Defendants' Assets may be sold by way of public or private sale or other disposition free and clear of all security interests, liens, claims and other interests. All valid security interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s). The Receiver shall be authorized to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such sale(s).

15.    In connection with any sale of the Defendants' Assets by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, in its sole discretion, *subject to the terms of the Loan Documents,* to permit a purchaser of the Defendants' Assets to assume the Loan or a portion thereof and to make any modifications to the Loan to which Plaintiff ~~agrees in writing. The~~ *and Defendants agree in writing.* ~~Receiver is hereby authorized and directed to execute any documentation on behalf of Defendant~~ as its attorney-in-fact to effectuate such assumption and modification of the Loan so long as such modifications to not increase the indebtedness and other amounts owed by Defendants under the Loan ~~Documents.~~

16.    The Receiver is authorized to engage Crescent Hotels and Resorts LLC ("**Crescent Hotels**") as may be necessary for the Receiver to carry out its duties and responsibilities under this Order (including, without limitation, the utilization and/or transfer of the liquor licenses pertaining to the Premises in accordance with applicable law pursuant to paragraph 20 of this Order), and to pay a management fee to Crescent Hotels as set forth on **Exhibit B** attached hereto and incorporated herein, which management fee shall be deemed a Project Expense. Crescent Hotels shall maintain errors and omissions insurance coverage of not less than $3,000,000 during the term of the receivership created by this Order and shall indemnify Defendants *and their agents acting as such,* for any claims brought against Defendants *, or their agents acting as such,* as a result of Crescent Hotels'

10

Case 1:12-mc-00069-NONE Document 1 Filed 06/08/12 USDC Colorado Page 11 of 32
Case 1:12-cv-00423-JGK Document 79 Filed 06/05/12 Page 11 of 32

Case 1:12-cv-00423-JGK Document 76 Filed 06/02/12 Page 54 of 75

negligence as determined by a court of competent jurisdiction with respect to claims covered under Crescent Hotels' errors and omissions policy.

17. The Receiver is authorized to engage an accountant and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to the Defendants' Assets, to prepare financial statements and reports required under this Order, to initiate such actions, suits and proceedings for and on behalf of the Receiver as may be necessary for the Receiver to carry out its duties and responsibilities under this Order. Upon the approval of Plaintiff of the reasonable fees and expenses of such accountant and attorneys, the Receiver shall be authorized to pay such fees and expenses as Project Expenses, subject to any objection by Defendants within fifteen (15) days after receiving written notice of such fees and expenses.

18. Within ten (10) business days after the date of this Order, the Receiver is authorized and directed to procure and maintain in full force and effect, and to pay the premiums for, insurance policies relating to the Premises with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents. Each such insurance policy obtained by the Receiver shall name the Receiver, Defendants and Plaintiff as named insureds and Plaintiff as loss payee. Defendants and their agents shall deliver copies of the existing insurance policies to the Receiver and are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that are in effect as of the date of this Order until the Receiver notifies Defendants and Plaintiff that the Receiver has obtained insurance for the Premises in accordance with this Order. Any refunds of pre-paid insurance premiums received by any Defendant or its agents upon the cancellation of their insurance coverage for the Premises is Project Income that shall be immediately remitted by

11

US2008 2987503.5 51121-397765

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 12 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 12 of 32
Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 55 of 75

Defendants to the Receiver.  Defendants and their respective agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that are in effect as of the date of this Order without the consent of the Receiver.

19.    Defendants shall provide their tax identification numbers and any other information requested by the Receiver in order to carry out the Receiver's duties under this Order.

20.    The Receiver is authorized to, in accordance with and subject to applicable law, (a) continue to utilize Defendants' or their affiliates' liquor licenses attributable to the Premises and/or (b) transfer such liquor licenses into the Receiver's name.

21.    The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Defendants' Assets, including the Premises, and otherwise to carry out the Receiver's obligations under this Order.

22.    In holding, retaining, managing, operating, preserving and protecting the Defendants' Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Premises and the other Defendants' Assets. The Receiver shall not terminate employees at the Premises in a manner that causes Plaintiff or Defendants to incur any liability under the Worker Adjustment and Retraining Notification Act (29 U.S.C. §§ 2101 to 2109).

*to the extent that those are valid and binding agreements of the Defendants.*

12

Case 1:12-mc-00069-NONE Document 1 Filed 06/08/12 USDC Colorado Page 13 of 32
Case 1:12-cv-00423-JGK Document 79 Filed 06/05/12 Page 13 of 32
Case 1:12-cv-00423-JGK Document 76 Filed 06/02/12 Page 56 of 75

23.      ~~Notwithstanding anything in this Order to the contrary,~~ Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising any rights it may exercise under applicable law as holder of security title to the Premises and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify the Receiver _and Defendants_ of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements.

24.      Upon the consummation of a sale or sales of all Premises (whether by judicial foreclosure proceedings against such Premises, non-judicial foreclosure proceedings against such Premises or the sale of the entire Premises pursuant to this Order) by the Receiver and/or Plaintiff, as applicable, the Receiver shall within 30 days of the sale of the last Premises move the Court to be discharged and relieved from this Order and shall render a final report concerning the operations of the Premises. The parties shall file any objections to the motion and report within 45 days of the filing of such motion and report. Upon this Court's entry of an order granting such motion, _the Receiver shall be discharged._ ~~this action shall thereupon be terminated.~~ This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver.

25.      The Receiver is required to submit proof of bond with the Clerk of this Court in the amount of _$10,000,000_ ~~$4,750,000.00~~ within ten (10) business days of this Order. Upon the

13

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 14 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 14 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 57 of 75

Receiver's submission of proof of bond, the Receiver shall be authorized and empowered to perform its duties under this order, including taking control of Defendants' Assets.

26.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Premises and the other Defendants' Assets and otherwise to comply with the terms of this Order.

**IT IS FURTHER ORDERED**, that the ~~Defendant Parties~~ *Defendants and their agents acting* and all persons and *as such,* entities acting in concert with any of them are hereby **ENJOINED** from:  (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver exercising its powers and performing its duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Defendants' Assets, specifically including, without limitation, the Project Records; and (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing, sale or operation of the Premises and the other Defendants' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver.

**SO ORDERED** this _5th_ day of June, 2012.

_____

United States District Judge

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 15 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 15 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 58 of 75

## Exhibit A

### EXHIBIT A
### LEGAL DESCRIPTION
### (BELLEVUE)

PARCEL A:

LOT 4, CITY OF BELLEVUE SHORT PLAT NO. 85-33 RECORDED DECEMBER 3, 1986
UNDER RECORDING NO. 8612039001, IN KING COUNTY, WASHINGTON.

PARCEL B:

ALL OF LOT 3 AND THAT PORTION OF LOT 1, BLOCK IV, PLAT OF CC&F I-90
BELLEVUE BUSINESS PARK DIVISION 4, ACCORDING TO THE PLAT THEREOF,
RECORDED IN VOLUME 128 OF PLATS, PAGES 86 THROUGH 88 INCLUSIVE, IN KING
COUNTY, WASHINGTON, LYING NORTHEASTERLY OF THE FOLLOWING
DESCRIBED LINE.

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 1, SAID CORNER
BEING ON THE SOUTHEASTERLY MARGIN OF 156TH AVENUE SOUTHEAST;
THENCE ALONG SAID SOUTHEASTERLY MARGIN THE FOLLOWING DISTANCES;
SOUTH 37°24'18" WEST A DISTANCE OF 0.55 FEET;
SOUTH 40°38"00" WEST A DISTANCE OF 198.57 FEET TO A POINT OF CURVATURE;
THENCE SOUTHWESTERLY ALONG THE ARC OF A 1525.50 FOOT RADIUS CURVE
TO THE RIGHT THROUGH A CENTRAL ANGLE OF 4°15'39", AN ARC DISTANCE OF
113.44 FEET TO THE POINT OF BEGINNING;
THENCE LEAVING SAID SOUTHEASTERLY MARGIN SOUTH 43°54'12" EAST A
DISTANCE OF 127.50 FEET TO THE SOUTHEASTERLY LINE OF SAID LOT 1 AND THE
TERMINUS OF SAID LINE.

(ALSO SHOWN AS LOT 3 OF CITY OF BELLEVUE BOUNDARY LINE ADJUSTMENT
NO. 85-34, RECORDED AUGUST 12, 1986 UNDER RECORDING NO. 8608129008).

PARCEL C:

A SIGN EASEMENT OVER THAT PORTION OF LOT 2 BLOCK IV CC&F I-90
BELLEVUE BUSINESS PARK DIVISION 4, ACCORDING TO THE PLAT THEREOF
RECORDED IN VOLUME 128 OF PLATS, PAGES 86 THROUGH 88, INCLUSIVE IN KING
COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 2, SAID POINT BEING
ON THE NORTHEASTERLY MARGIN OF THE FR-2 LINE OF PRIMARY STATE
HIGHWAY NO. 2;

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 16 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 16 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 59 of 75

THENCE NORTH 10°23'49" EAST 35.40 FEET ALONG THE WESTERLY LINE OF SAID
LOT 2;
THENCE SOUTH 36°02'08" EAST 24.45 FEET;
THENCE SOUTH 53°57'52" WEST 25.71 FEET TO THE POINT OF BEGINNING

PARCEL D:

AN EASEMENT FOR ELECTRICAL LINES 5 FEET IN WIDTH OVER LOT 2, BLOCK IV,
CC&F I-90 BELLEVUE BUSINESS PARK DIVISION 4, ACCORDING TO THE PLAT
THEREOF RECORDED IN VOLUME 128 OF PLATS PAGES 86 THROUGH 88
INCLUSIVE IN KING COUNTY, WASHINGTON, HAVING THE ENTIRE FEET OF SUCH
WIDTH LYING TO THE LEFT OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 2;
THENCE ALONG THE NORTHERLY LINE OF SAID LOT 2 THE FOLLOWING
COURSES:

1. SOUTH 46°05'48" WEST 3.00 FEET;
2. SOUTH 06°41'34" WEST 77.65 FEET;
3. SOUTH 53°57'53" WEST 142.78 FEET;
4. NORTH 42°08'56" WEST 150.86 FEET TO THE SOUTHEASTERLY MARGIN OF 156TH
AVENUE SOUTHEAST;

THENCE SOUTH 53°57'52" WEST 171.07 FEET ALONG SAID SOUTHEASTERLY
MARGIN TO THE TERMINUS OF SAID LINE.

THE SIDELINES OF THIS EASEMENT SHALL BE SHORTENED OR LENGTHENED AS
NECESSARY TO INTERSECT THE NORTHEASTERLY LINE OF SAID LOT 2.

PARCEL E:

A SANITARY SEWER EASEMENT 10 FEET IN WIDTH OVER LOT 2, BLOCK IV, CC&F
I-90 BELLEVUE BUSINESS PARK DIVISION 4, ACCORDING TO THE PLAT THEREOF,
RECORDED IN VOLUME 128 OF PLATS. PAGES 86 THROUGH 88, INCLUSIVE, IN
KING COUNTY, WASHINGTON HAVING 5 FEET OF SUCH WIDTH LYING ON EACH
SIDE OF THE FOLLOWING DESCRIBED EASEMENT CENTERLINE.

COMMENCING AT THE MOST NORTHEASTERLY CORNER OF THE ABOVE-
DESCRIBED PARCEL;
THENCE NORTH 49°32'19" WEST 36.87 FEET ALONG THE NORTH LINE OF THE
ABOVE-DESCRIBED PARCEL TO THE TRUE POINT OF BEGINNING FOR THIS
EASEMENT;
THENCE SOUTH 03°41'44" EAST 29.25 FEET;
THENCE SOUTH 42°23'40" WEST 400.00 FEET;

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 17 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 17 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 60 of 75

THENCE SOUTH 15°32'47" WEST 39.26 FEET TO THE NORTHERLY MARGIN OF EASTGATE WAY AND THE TERMINUS OF SAID EASEMENT CENTERLINE.

THE SIDELINES OF THIS EASEMENT SHALL BE SHORTENED OR LENGTHENED AS NECESSARY TO INTERSECT AT ANGLE POINTS AND THE BOUNDARY LINE OF THE DESCRIBED PARCEL.

PARCEL F:

A NON-EXCLUSIVE PARKING EASEMENT AS CREATED BY RECIPROCAL PARKING AND EASEMENT AGREEMENT RECORDED FEBRUARY 10, 1989 UNDER RECORDING NUMBER 8902101139, IN KING COUNTY, WASHINGTON.

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 18 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 18 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 61 of 75

### EXHIBIT A CONTINUED
### LEGAL DESCRIPTION
### (BLUE ASH)

Situate in the City of Blue Ash, County of Hamilton, and State of Ohio, in Section 17, Town 4, Entire Range 1, Sycamore Township, and being part of Lot Number 14 of the Resubdivision of Prudential Business Park, Section 3, as recorded in Plat Book 262, Pages 30 and 31 of the Hamilton County, Ohio Records, and being more particularly described as follows:

Commencing at the intersection of the centerlines of Reed Hartman Highway and Lake Forest Drive, thence North 10° 22' 24" West, 75.00 feet; thence leaving said centerlines, South 79° 37' 36" West, 35.00 feet to a point in the westerly right of way line of Reed Hartman Highway and the real point of beginning;

Thence in a southwesterly direction on a curve to the right having a radius of 35.00 feet, an arc length of 54.98 feet, a chord length of 49.50 feet and a chord bearing of South 34° 37' 36" West, thence along the northerly right of way line of Lake Forest Drive, South 79° 37' 36" West 146.50 feet; thence South 78° 44' 43" West 325.04 feet; thence South 79° 37' 36" West 128.50 feet; thence leaving the North right of way line of Lake Forest Drive in a northwesterly direction on a curve to the right having a radius of 35.00 feet, an arc length of 54.98 feet, a chord length of 49.50 feet, and a chord bearing of North 55° 22' 24" West, thence along the easterly right of way line of Ashview Place (formerly Woodview Drive) North 10° 22' 24" West 351.32 feet; thence in a northwesterly direction on a curve to the left having a radius of 231.04 feet, an arc length of 14.39 feet, a chord length of 14.39 feet and a chord bearing of North 12° 09' 28" West; thence leaving the easterly right of way line of Ashview Place, North 79° 08' 7" East 670.47 feet to a point in the westerly right of way line, South 10° 22' 24" East 366.29 feet to the said real point of beginning.

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 19 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 19 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 62 of 75

**EXHIBIT A CONTINUED**
**LEGAL DESCRIPTION**
**(COLORADO SPRINGS)**

Lot 1, a Resubdivision of Monument Creek Commerce Center, together and along with a portion of a replat of Commerce Center Drive, according to the plat thereof recorded in Plat Book Y-3 at Page 33,
County of El Paso, State of Colorado described as follows:

**Beginning** at the most Southeasterly corner of said Lot 1, which point is also on the Westerly right-of-way of existing Commerce Center Drive:
(The next four courses will be along the Westerly and Northerly right-of-way of said Commerce Center Drive)

1.) N00°34'40"W a distance of 65.89 feet (plat), N00°32'04"W a distance of 65.92 feet (measured);
2.) Thence along the arc of a curve to the right a distance of 412.46 feet, said curve having a radius of 261.00 feet, a central angle of 90°32'41" and whose chord bears N44°41'41"E a distance of 370.86 feet;
3.) Thence N89°58'01"E a distance of 129.57 feet;
4.) Thence along the arc of a curve to the left a distance of 192.67 feet, to the Westerly right-of-way of Colorado Interstate No. 25, as recorded in Book 1778 at Page 90 of the El Paso County records, said curve having a radius of 203.67 feet, a central angle of 54°12'04" and whose chord bears N62°51'59"E a distance of 185.57 feet;

Thence N01°06'40"W a distance of 109.31 feet;
Thence N08°52'40"W a distance of 140.17 feet;
Thence N89°29'19"W a distance of 666.89 feet (plat), N89°28'58"W a distance of 666.66 feet (measured);
Thence S60°55'45"W a distance of 410.92 feet (plat), S60°56'12"W a distance of 411.15 feet (measured);
Thence S00°46'19"E a distance of 211.54 feet;
Thence S22°48'21"W a distance of 71.30 feet;
Thence N88°53'20"E a distance of 175,05 feet;
Thence N01°06'40"W a distance of 342.31 feet (plat), N01°06'24"W a distance of 342.42 feet (measured);
Thence N60°55'45"E a distance of 249.54 feet (plat), N60°56'11"E a distance of 249.58 feet (measured);
Thence S89°29'19"E a distance of 75.46 feet (plat), S89°24'46"E a distance of 75.49 feet (measured);
Thence S01°06'40"E a distance of 657.82 feet (measured & plat);

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 20 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 20 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 63 of 75

Thence N89°25'20"E a distance of 44.87 feet (plat), N89°27'34"E a distance of 44.82 feet (measured) to the **Point of Beginning.**

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 21 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 21 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 64 of 75

EXHIBIT A CONTINUED
LEGAL DESCRIPTION
(DENVER)

Parcel A:

A part of the Southwest ¼ of Section 33, Township 4 South, Range 67 West of
the 6th P.M., City and County of Denver, State of Colorado more particularly
described as follows:

Commencing at the Southwest corner of said Southwest ¼;
Thence Northerly along the West line of said Southwest ¼ 262.5 feet (record)
262.13 feet (measured) to a  No. 5 rebar, (record) (chiseled "X"-surveyed), also
being the **Point of Beginning;**
Thence on an angle to the right of 89°58'43" (record) 89°55'54" (surveyed) and
parallel to the South line of said Southwest ¼, 225.00 feet (record) 225.24 feet
(measured) to a No. 5 rebar;
Thence on an angle to the left of 89°58'43" (record) 90°31'26" (surveyed) a
distance of 30.00 feet (record) 29.92 feet (measured) to a No. 5 rebar;
Thence on an angle to the right of 89°58'43" (record) 90°44'36" (surveyed) a
distance of  141.15 feet (record) 141.26 feet (measured) to a No. 5 rebar;
Thence on an angle to the left of 108°57'15" (record) 108°58'32" (surveyed)
449.24 feet (record) 449.38 feet (measured) to a chiseled "X" in gutter;
Thence on an angle to the left of 44°01'28" (record) 43°55'56" (surveyed) a
distance of 246.99 feet (record) 246.55 feet (measured) to a No. 5 rebar on the
West line of said Southwest ¼;
Thence on an angle to the left of 117°00'00" (record) 117°02'31" (surveyed) and
along said West line, 567.11 feet (record) 567.23 feet (measured) to the **Point of
Beginning,**
City and County of Denver, State of Colorado.

Parcel B:

A part of the Southwest ¼ of Section 33, Township 4 South, Range 67 West of
the 6th P.M., more particularly described as follows:

Commencing at the Southwest corner of said Section;
Thence Northerly along the West line of said Section 262.50 feet;
Thence on an angle to the right of 89°58'43" a distance of 239.95 feet;
Thence on an angle to the right of 90°01'17" a distance of 189.13 feet to the
Northerly right of way of East Hampden Avenue;
Thence on an angle to the left of 81°29'20" and along said Northerly right of way
22.73 feet;

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 22 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 22 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 65 of 75

Thence on an angle to the left of 08°31'56" and along said right of way 265.47 feet;

Thence on an angle to the left of 90°00'00" a distance of 50.41 feet;

Thence on an angle to the left of 18°57'15" a distance of 95.00 feet;

Thence on an angle to the left of 38°35'00" a distance of 102.15 feet to a point of curve;

Thence along a tangent curve to the right having a radius of 125.00 feet, a central angle of 22°04'21" a distance of 48.16 feet to the **Point of Beginning**;

Thence continuing along said curve to the right having radius of 125.00 feet, a central angle of 16°30'39", 36.02 feet to a point of tangent;

Thence along said tangent to the right of 377.20 feet to a point of curve;

Thence along said tangent curve to the left having a radius of 70.00 feet, a central angle of 23°54'32" (record) 24°16'20" (surveyed) a distance of 29.21 feet (record) 29.65 feet (measured);

Thence on an angle to the left of 156°05'28" (record) 155°56'52" (surveyed) a distance of 443.11 feet (record) 443.74 feet (measured);

Thence on an angle to the left of 87°35'59" (record) 87°59'34" (surveyed) a distance of 9.23 feet (record) 9.08 feet (measured);

Thence on an angle to the left of 53°34'23" (record) 53°07'58" (surveyed) a distance of 3.09 feet to the **Point of Beginning**,

City and County of Denver, State of Colorado.

Parcel C:

The non-exclusive easement rights created by the Reciprocal Easement Agreement recorded June 19, 1980 in Book 2175 at Page 499, as amended August 20, 1980 in Book 2212 at Page 622 and May 11, 1984 in Book 3095 at Page 544, re-recorded June 6, 1984 in Book 3116 at Page 347,

City and County of Denver, State of Colorado.

Parcel D:

The easement rights contained in the Reciprocal Easement Agreement recorded September 11, 1974 in Book 943 at Page 167,

City and County of Denver, State of Colorado.

Parcel E:

The easement rights contained in the Reciprocal Easement Agreement recorded December 18, 1975 in Book 1170 at Page 679, as amended June 19, 1980 in Book 2175 at Page 481.

City and County of Denver, State of Colorado.

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 23 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 23 of 32

Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 66 of 75

## EXHIBIT A CONTINUED
## LEGAL DESCRIPTION
## (EL PASO)

PARCEL 1:

Three parcels of land, being portions of Lots 11 and 12, Block 2, COMMERCE PARK, an addition to the City of El Paso, El Paso County, Texas, according to map or plat thereof recorded in Volume 26, Page 11, Real Property Records of El Paso County, Texas; and a portion of Lot 1, Block 1, BASSETT COMMERCIAL COMPLEX UNIT 1, an addition to the City of El Paso, El Paso County, Texas, according to the Plat thereof on file in Volume 18, Page 44, Real Property Records of El Paso County, Texas; being more particularly described by Metes and Bounds in Exhibit "A-1", attached hereto and made a part hereof.

PARCEL 2:

Easement Rights pursuant to that certain joint use easement filed in Volume 438, Page 16, Real Property Records of El Paso County, Texas, between Surety Savings and Loan Association and R. E. Welch and Bates Belk in Volume 654, Page 701; refiled in Volume 688, Page 659 and Volume 688, Page 669, Real Property Records of El Paso County, Texas; transfer of all interest from Mutual Savings Association of El Paso to Hometels of El Paso, Inc. and Western Savings and Loan Association in Volume 758, Page 1006; and said joint used agreement modified in Volume 691, Page 293, Real Property Records of El Paso County, Texas and transfer of interest from El Paso Hometel Associates, Ltd. to El Paso Hotel Associated filed in Volume 2602, Page 1168, Real Property Records of El Paso County, Texas, covering two parcels of of Lot 1, Block 1, BASSETT COMMERCIAL COMPLEX UNIT 1, an addition to the City of El Paso, El Paso County, Texas.

PARCEL 3:

The non-exclusive rights for parking and driveway use pursuant to that certain Declaration Judgement and permanent injunction dated October 5, 1979, out of Cause No. 77-2552, styled Steven Restaurant, Inc. (Plaintiff) vs. Hometels of El Paso, Inc. (Defendant and Third Party Plaintiff) vs. Bates M. Beck and R. E. Welch (Third Party Plaintiffs).

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 24 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 24 of 32
Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 67 of 75

<u>Metes and Bounds Description</u>

All that certain tract or parcel of land, containing 2.5503 acres and lying within the corporate limits of the City of El Paso, El Paso County, Texas, same being a portion of Lots 11 and 12, block 2, Commerce Park, an addition in the City of El Paso, according to the plat thereof recorded in Book 26, Page 11; Lot 1, block 1, Bassett Commercial Complex, Unit One, an addition to the City of El Paso, according to the plat thereof recorded in Book 22, Page 33 of the Plat Records of El Paso County, Texas, same being that certain tract described as three parcels in deed to Hometels of El Paso, Inc., of record in Book 748, Page 895, of the Deed Records of El Paso County, Texas, and being a portion of that certain called 0.406 acre tract described in a Correction Warranty Deed from La Quinta- El Paso, LTD., to Surety Savings and Loan Association, of record in Book 444, Page 2094, of the Deed Records of El Paso County, Texas, and also being more particularly described as four parcels by metes and bounds as follows:

PARCEL 1:

BEGINNING at an "x" found cut on a concrete curb for the northwest corner of Parcel1 of said Hometel Tract, same being on the south right-of-way of U.S. Interstate No. 10;

THENCE South 83° 31' 32" East, with the south right-of-way of said U.S. Interstate 10, a distance of 216.12 feet to a ½ inch rebar found marking the northeast corner of said Parcel 1, same being the northwest corner of said 0.406 acre tract, and also being the northeast corner of that certain 25 foot Joint Use Easement between Surety Savings and Loan Association and R. T. Welch, et al, of record in Book 438, Page 0016 of the Deed Records of El Paso County, Texas;

THENCE, South 09° 33' 20" East, wide the west line of said 0.406 acre tract, at 214.85 feet pass a ½-inch rebar found marking its southwest corner, continuing with the west line of that certain 3.518 acre tract described in a Correction Warranty Deed from Phillips Petroleum Company to La Quinta-El Paso, Ltd., of record in Book 411, Page 1553 of the Deed Records of El Paso County, Texas in all a distance of 399.54 feet to a Bridge Nail found in a wall for the southeast corner of said Parcel 1;

THENCE, North 83° 31' 32" West with the south line of said Parcel 1, at 44.45 feet pass a ½-inch rebar found marking the northeast corner of Parcel 3 of said Hometel tract, continuing with the north line of said Parcel 3, in all a distance of 294.41 feet to a ½ inch rebar with plastic cap set for the easternmost southwest corner of said Parcel 1, same being the northwest corner of said Parcel 3;

THENCE, North 06° 28' 28" East, a distance of 164.00 feet to a ½-inch rebar found marking an interior corner of said Parcel 1;

THENCE, North 83° 31' 32" West, a distance of 32.00 feet to a ½-inch rebar found marking the northernmost southwest corner of said parcel 1;

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 25 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 25 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 68 of 75

THENCE, North 06° 28' 28" East, a distance of 220.00 feet to the POINT OF BEGINNING and containing 2.271 acres (98,927 square feet) of land.

PARCEL 2:

BEGINNING at a point on the southerly right of way line of U.S. Interstate Highway 10 (gateway East) and located South 83° 31' 32" East, a distance of 270.54 feet from the Northeast corner of Lot 11, Block 2, COMMERCE PARK SUBDIVISION same being the Northeast corner of said COMMERCIE PARK SUBDIVISION; in the City of El Paso, El Paso County, Texas;

THENCE South 83° 31' 32" East along said right of way line a distance of 2.16 feet;

THENCE North 88° 27' 34" East continuing along said right of way line a distance of 11.57 feet;

THENCE South 09° 33' 20" East a distance of 20.425 feet;

THENCE South 48° 39' 40" West a distance of 15.92 feet;

THENCE North 09° 33' 20" West a distance of 214.85 feet to the POINT OF BEGINNING and containing 2834.13 square feet equal to 0.065 acre.

PARCEL 3:

BEGINNING at an i/1 inch rebar found marking the easternmost southwest corner of said Parcel 1, same being the northwest corner of said Parcel 3;

THENCE, South 83° 31' 32" East, with the south line of said Parcel 1, a distance of 250.00 feet to a ½-inch rebar found marking the northeast corner of said Parcel 3;

THENCE, South 06° 28' 28" West, with the west line of said Parcel 3, a distance of 20.00 feet to a ½-inch rebar found for corner;

THENCE, North 83° 31' 31" West, with the south line of said Parcel 3, a distance of 250.00 feet to a ½-inch rebar found for corner;

THENCE, North 06° 28' 28" East, with the west line of said Parcel 3, distance of 20.00 feet to the POINT OF BEGINNING and containing 0.115 acres (5,000 square feet) of land.

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 26 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 26 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 69 of 75

**EXHIBIT A CONTINUED**
**LEGAL DESCRIPTION**
**(LIVONIA)**

PARCEL I:

Situated in the City of Livonia, County of Wayne, State of Michigan.
A PARCEL OF LAND BEING A PART OF THE SOUTHWEST 1/4 OF SECTION 6, TOWN 1
SOUTH, RANGE 9 EAST, CITY OF LIVONIA, WAYNE COUNTY, MICHIGAN,
DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTH 1/4 CORNER OF SECTION
6, TOWN 1 SOUTH, RANGE 9 EAST, MICHIGAN, AND PROCEEDING THENCE NORTH
88° 03' 03" EAST, 791.00 FEET ALONG THE SOUTH LINE OF SECTION 6; THENCE
NORTH 01° 56' 57" WEST, 100.00 FEET TO THE EASTERLY RIGHT-OF-WAY LINE OF
THE INTERSTATE I-275 FREEWAY; THENCE ALONG SAID RIGHT-OF-WAY LINE THE
FOLLOWING EIGHT COURSES AND DISTANCES; NORTH 46° 56' 57" WEST, 176.78
FEET AND NORTH 01° 56' 57" WEST, 182.04 FEET AND NORTH 28° 18' 53" WEST,
214.08 FEET AND NORTH 54° 41' 00" WEST 521.20 FEET AND NORTH 45° 10' 07" WEST,
245.79 FEET AND NORTH 26° 08' 28" WEST, 245.79 FEET AND NORTH 16° 35' 10" WEST
369.12 FEET AND 225.69 FEET ALONG THE ARC OF A NON-TANGENT CURVE TO
THE LEFT, HAVING A RADIUS OF 5963.58 FEET, PASSING THROUGH A CENTRAL
ANGLE OF 02° 10' 06", WITH A LONG CHORD BEARING OF NORTH 19° 02' 26" WEST,
225.68 FEET TO A POINT ON THE CURVE, SAID POINT BEING THE POINT OF
BEGINNING; CONTINUING THENCE 325.15 FEET ALONG THE ARC OF THE NON-
TANGENT CURVE TO THE LEFT, HAVING A RADIUS OF 5963.58 FEET, PASSING
THROUGH A CENTRAL ANGLE OF 03° 07' 26", WITH A LONG CHORD BEARING OF
NORTH 21° 41' 12" WEST, 325.11 FEET TO A POINT ON THE CURVE; THENCE NORTH
87° 31' 43" EAST, 792.66 FEET TO A POINT ON A CURVE ON THE WESTERLY RIGHT-
OF-WAY LINE OF VICTOR PARKWAY (VARIABLE WIDTH); THENCE ALONG SAID
RIGHT-OF-WAY LINE 29.41 FEET ALONG THE ARC OF A CURVE TO THE RIGHT,
HAVING A RADIUS OF 1604.82 FEET, PASSING THROUGH A CENTRAL ANGLE OF
01° 03' 00", WITH A LONG CHORD BEARING OF SOUTH 02° 52' 38" EAST, 29.41 FEET
AND SOUTH 02° 21' 08" EAST, 250.18 FEET; AND 27.42 FEET ALONG THE ARC OF A
CURVE TO THE LEFT, HAVING A RADIUS OF 550.00 FEET, PASSING THROUGH A
CENTRAL ANGLE OF 02° 51' 24", WITH A LONG CHORD BEARING OF SOUTH 03° 46'
50" EAST 27.42 FEET TO A POINT ON THE CURVE; THENCE SOUTH 87° 31' 43" WEST
685.97 FEET TO THE POINT OF BEGINNING.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR PURPOSES OF INGRESS AND EGRESS
CREATED AND GRANTED AS AN APPURTENANCE TO PARCEL I ABOVE AND
CREATED, DEFINED, AND SUBJECT TO THE TERMS AND CONDITIONS OF AND
LIMITED BY THAT CERTAIN ACCESS EASEMENT AGREEMENT BY, BETWEEN AND
EXECUTED BY VICTOR CORPORATE LAND INVESTMENT PARTNERSHIP, A
MICHIGAN CO-PARTNERSHIP AND LIVONIA HOTEL ASSOCIATES, AN ILLINOIS

GENERAL PARTNERSHIP, DATED OCTOBER 5, 1988, RECORDED OCTOBER 7, 1988,
IN LIBER 23915, PAGE 678, WAYNE COUNTY RECORDS.

## EXHIBIT A CONTINUED
## LEGAL DESCRIPTION
## (LYNNWOOD)

PARCEL A:

PARCEL 3 OF THAT CERTAIN BINDING SITE PLAN SURVEY RECORDED FEBRUARY 21, 1991, UNDER RECORDING NO. 9102215001, SNOHOMISH COUNTY, WASHINGTON;

PARCEL B:

A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND UTILITIES OVER AND ACROSS TRACT B OF SAID SURVEY AS ESTABLISHED BY DECLARATION OF EASEMENT RECORDED JANUARY 15, 1991 UNDER RECORDING NO. 9101150181, IN SNOHOMISH COUNTY, WASHINGTON.

PARCEL C:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER AND UPON THE COMMON AREA AS ESTABLISHED AND DESCRIBED IN DECLARATION OF PROTECTIVE COVENANTS, CONDITIONS, EASEMENTS AND RESTRICTIONS RECORDED FEBRUARY 25, 1991 UNDER RECORDING NO. 9102250309, AND AS AMENDED BY INSTRUMENT RECORDED APRIL 23, 1992 UNDER RECORDING NO. 9204230640 AND BY INSTRUMENT RECORDED JUNE 25, 1992 UNDER RECORDING NO. 9206250231, IN SNOHOMISH COUNTY, WASHINGTON.

PARCEL D:

A NON-EXCLUSIVE EASEMENT FOR PARKING NON COMMERCIAL AUTOMOBILES AND PEDESTRIAN AND VEHICULAR ACCESS ON A PORTION OF PARCEL 2 OF SAID BINDING SITE PLAN RECORDED FEBRUARY 21, 1991 UNDER RECORDING NO. 9102215001, AS ESTABLISHED BY RECIPROCAL PARKING AND EASEMENT AGREEMENT RECORDED FEBRUARY 25, 1991 UNDER RECORDING NO. 9102250317, IN SNOHOMISH COUNTY, WASHINGTON.

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 28 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 28 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 71 of 75

## EXHIBIT A CONTINUED
## LEGAL DESCRIPTION
## (PORTLAND)

PARCEL I:

A tract of land over a portion of the West half of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the City of Tigard, County of Washington and State of Oregon, being more particularly described as follows:

Commencing at a point on the West line of that tract as described in deed recorded in Book 865, page 195, which bears North 00°12'03" East 300.85 feet from the most Westerly Northwest corner of that certain tract of land described in Book 576, page 196 of said Deed Records; thence North 00°19'18" East 354.78 feet and North 88°21'33" West 46.01 feet to the true point of beginning; thence North 89°28'57" West 511.23 feet; thence North 29°47'18" East 71.55 feet to a point of curvature; thence 105.00 feet along the arc of a 130.00 foot radius curve to the left through a central angle of 46°16'33" (the long chord of which bears North 06°39'01" East 102.17 feet); thence leaving said curve and a radius bearing North 73°30'45" East 121.14 feet; thence North 32°53'32" East 300.00 feet to the intersection of SW Hall Blvd., (County Road No. 1165) being 45.00 feet from the center line of said SW Hall Blvd.; thence along the Southerly line of said SW Hall Blvd., South 56°48'17" East 102.37 feet to a point of curvature; thence 120.69 feet along the arc of a 909.93 foot radius curve to the right through a central angle of 07°30'10" (07°36'58" record) (the long chord of which bears South 52°59'48" East 120.60 feet); thence leaving said SW Hall Blvd., South 01°16'28" East 209.33 feet; thence South 00°19'18" West 117.63 feet to the true point of beginning.

EXCEPTING THEREFROM that portion of said land as described in Donation Deed to the State of Oregon, by and through its Department of Transportation, Highway Division, recorded on August 25, 1989 as Fee No. 89-39678, which lies within the above described tract.

PARCEL II:

A tract of land over a portion of the West half of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the City of Tigard, County of Washington and State of Oregon, being more particularly described as follows:

Commencing at a point on the West line of that tract as described in deed recorded in Book 865, page 195, which bears North 00°12'03" East 300.85 feet from the most Westerly Northwest corner of that certain tract of land described in Book 576, page 196, said Deed Records; thence North 00°19'18" East 656.11 feet to the Southerly line of SW Hall Blvd. (County Road No. 1165); thence along the Southerly line of SW Hall Blvd., as follows: North 46°19'48" West (46°19'50" West record) 8.78 feet to a point of curvature; thence 169.09 feet along the arc of a 924.93 foot radius curve to the left through a central angle of 10°28'27" (the long chord of which bears North 51°34'03" West 168.85 feet) to a point of tangency; thence North 56°48'17" West 102.37 feet; thence South 32°53'32" West 15.00 feet to the true point of beginning; thence continuing from the true point of beginning along the Southerly line of said SW Hall Blvd., North 56°48'17" West 177.08 feet (177.00 feet record); thence leaving said SW Hall Blvd.,

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 29 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 29 of 32

Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 72 of 75

South 32°53'32" West 342.17 feet to the intersection of 150.00 foot radius curve; thence 17.04 feet along the arc of said 150.00 foot radius curve to the left through a central angle of 06°30'27" (the long chord of which bears North 65°31'34" West 17.03 feet) to a point of reverse curvature; thence 78.54 feet along the arc of a 50.00 foot radius curve to the right through a central angle of 90°00'00" (the long chord of which bears North 23°46'37" West 70.71 feet); thence North 68°46'37" West 20.00 feet; thence 109.96 feet along the arc of a 70.00 foot radius curve to the left through a central angle of 90°00'00" (the long chord of which bears South 23°46'37" East 98.99 feet) to a point of reverse curvature; thence 118.64 feet along the arc of a 130.00 foot radius curve to the right through a central angle of 52°17'22" (the long chord of which bears South 42°37'56" East 114.57 feet); thence leaving said curve radially North 73°30'45" East 121.14 feet; thence North 32°53'32" East 300.00 feet to the true point of beginning.

EXCEPTING THEREFROM that portion of said land as described in Donation Deed to the State of Oregon, by and through its Department of Transportation, Highway Division, recorded on August 25, 1989 as Fee No. 89-39678, which lies within the above described tract.

PARCEL III (Access Road No. 1):

An easement as created by document recorded December 27, 1985 as Fee No. 85051371 for ingress and egress over the following described property:

A tract of land located in the West half of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the City of Tigard, County of Washington and State of Oregon, being more particularly described as follows:

Beginning at a point in the Easterly line of SW Scholls Ferry Road which point is located 30.00 feet left of State Highway Engineer's Station S.F.B. 16+39.68; thence South 21°13'23" West 105.00 feet; thence leaving SW Scholls Ferry Road, South 68°46'37" East 82.00 feet to a point of curvature; thence 163.43 feet along the arc of a 95.00 foot radius curve to the right through a central angle of 98°33'55" (the long chord of which bears South 19°29'40" East 144.01 feet) to a point of tangency; thence South 29°47'18" West 183.33 feet to a point of curvature; thence 42.64 feet along the arc of a 30.00 foot radius curve to the right through a central angle of 81°26'05" (the long chord of which bears South 70°30'21" West 39.14 feet) to a point of tangency; thence North 68°46'37" West 84.75 feet to a point on said SW Scholls Ferry Road; thence South 19°56'18" West 57.63 feet; thence South 88°32'13" East 45.77 feet; thence South 34°52'00" East 46.58 feet; thence South 88°30'08" East 78.60 feet to the intersection of a curve; thence 123.82 feet along the arc of a 445.00 foot radius curve to the right through a central angle of 15°56'32" (the long chord of which bears North 21°49'03" East 123.41 feet) to a point of tangency; thence North 29°47'18" East 121.15 feet to a point of curvature; thence 223.64 feet along the arc of 130.00 foot radius curve to the left through a central angle of 98°33'55" (the long chord of which bears North 19°29'40" West 197.06 feet) to a point of reverse curvature; thence 109.96 feet along the arc of a 70.00 foot radius curve to the right through a central angle of 90°00'00" (the long chord of which bears North 23°46'37" West 98.99 feet); thence North 68°46'37" West 12.00 feet to the point of beginning.

PARCEL IV (Access Road No. 2):

Case 1:12-mc-00069-NONE  Document 1  Filed 06/08/12  USDC Colorado  Page 30 of 32
Case 1:12-cv-00423-JGK  Document 79  Filed 06/05/12  Page 30 of 32

Case 1:12-cv-00423-JGK  Document 76  Filed 06/02/12  Page 73 of 75

An easement as created by document recorded December 27, 1985 as Recorder's Fee No. 85051370 for ingress and egress over the following described property:

A tract of land over a portion of the West half of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the City of Tigard, County of Washington and State of Oregon, being more particularly described as follows:

Commencing at a point on the East line of that tract as described in deed recorded in Book 999, page 398, which bears North 00°12'03" East 300.85 feet from the most Westerly Northwest corner of that certain tract of land described in Book 576, page 196 of said Deed Records; thence North 00°19'18" East 150.14 feet to the true point of beginning; thence North 88°21'33" West 46.01 feet; thence North 00°19'18" East 322.27 feet to a 5/8 inch iron rod; thence North 01°16'28" West 229.38 feet to a 5/8 inch iron rod on the Southerly line of SW Hall Blvd., also being the intersection of curve; thence along the Southerly line of said SW Hall Blvd. and 61.38 feet along the arc of a 924.93 foot radius curve to the right through a central angle of 03°48'08" (the long chord of which bears South 48°13'53" East 61.37 feet) to a point of tangency; thence South 46°19'48" East 8.78 feet; thence leaving SW Hall Blvd., South 00°19'18" West 505.97 feet to the true point of beginning.

EXCEPTING THEREFROM those portions of said land as described in Donation Deeds to the State of Oregon, by and through its Department of Transportation, Highway Division, recorded July 25, 1988 as Fee No. 88-32281 and recorded August 25, 1989 as Fee No. 89-39678, which lie within the above described tract.

PARCEL V:

A sign easement as created by document recorded December 27, 1985 as Fee No. 85051373 over the following described property:

A tract of land situated in the Southwest quarter of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the City of Tigard, County of Washington and State of Oregon, more particularly described as follows:

Beginning at a point of intersection of the Easterly right of way line of Beaverton-Tigard Freeway and the North line of that tract of land granted to Gust Olson by deed recorded March 2, 1892 in Book 33, page 334, Deed Records of Washington County; thence North 19°19'29" East 14.23 feet; thence North 0°41'08" East 671.46 feet; thence Northeasterly along the arc of a tangent 500.00 foot radius curve to the right 129.18 feet through a central angle of 14°48'09"; thence North 88°21'11" West 13.46 feet; thence North 34°47'25" West 46.50 feet; thence North 88°45'53" West 45.82 feet to a point on the East line of SW Scholls Ferry Road; thence North 19°56'09" East 57.62 feet to the true point of beginning; thence South 68°45'35" East 84.68 feet to a point of curvature; thence Northeasterly along the arc of a tangent 30.00 foot radius curve to the left 42.64 feet through a central angle of 81°26'05"; thence tangent to said curve North 29°48'20" East 183.33 feet to a point of curvature; thence Northwesterly along the arc of tangent 95.00 foot radius curve to the left 163.43 feet through a central angle of 98°33'55"; thence

Case 1:12-mc-00069-NONE   Document 1   Filed 06/08/12   USDC Colorado   Page 31 of 32
Case 1:12-cv-00423-JGK   Document 79   Filed 06/05/12   Page 31 of 32

Case 1:12-cv-00423-JGK   Document 76   Filed 06/02/12   Page 74 of 75

tangent to said curve North 68°45'35" West 82.00 feet to a point on the East line of SW Scholls Ferry Road; thence Southwesterly along the East line of SW Scholls Ferry Road to the true point of beginning.

PARCEL VI:

An easement for parking, ingress and egress over the land described therein pursuant to the terms and provisions thereof as granted in that certain Reciprocal Parking, Ingress and Egress Easement Agreement recorded December 27, 1985 as Fee No. 85051374 as modified by document recorded January 3, 1990 as Fee No. 90-00345 and as further modified by that certain Amended and Restated Reciprocal Access Easement recorded July 30, 2002 as Fee No. 2002-086867.

PARCEL VII:

An easement for parking, ingress and egress over the land described therein pursuant to the terms and provisions thereof as granted in that certain Reciprocal Parking, Ingress and Egress Easement Agreement recorded December 27, 1985 as Fee No. 85051375 as modified by document recorded January 3, 1990 as Fee No. 90-00345 and as further modified by that certain Amended and Restated Reciprocal Access Easement recorded July 30, 2002 as Fee No. 2002-086867.

Case 1:12-mc-00069-NONE Document 1 Filed 06/08/12 USDC Colorado Page 32 of 32
Case 1:12-cv-00423-JGK Document 79 Filed 06/05/12 Page 32 of 32
Case 1:12-cv-00423-JGK Document 76 Filed 06/02/12 Page 75 of 75

### Exhibit B

### Receivership Compensation

**Monthly Receiver's Fee**:

The Receiver shall receive a monthly receivership administration fee equal to 0.5% of Gross Revenues for such month paid in arrears. As used in this Exhibit B, the term "Gross Revenues" shall mean all rents, revenues, income and receipts (less any credits or refunds) of every kind from the Premises as determined in accordance with the Uniform System of Accounts for the Lodging Industry and with GAAP, but shall exclude revenue derived from (a) proceeds of claims on account of insurance policies; (b) abatement of taxes; (c) awards arising out of takings by eminent domain or (d) discounts and dividends on insurance policies.

**Monthly Hotel Management Fee**:

The Receiver's property manager, Crescent Hotels, shall receive a monthly hotel management fee equal to 1.9% of Gross Revenues for such month paid in arrears.

**Disposition Fee**:

Upon the complete liquidation of Defendants' Assets (by sale through the receivership, foreclosure or otherwise) the Receiver shall be entitled to a disposition fee in an amount equal to .25% of the difference between:

      (a)    the gross sales proceeds received by Plaintiff from the disposition of the Premises less all amounts advanced by Plaintiff for the repair and/or improvement of the Premises (including, without limitation, amounts advanced to (x) comply with obligations under the Premises' franchise agreements and (y) address deferred maintenance items) that are in excess of normal and customary FF&E Reserve items or typical repairs and maintenance expenses first arising after the date of this Order (the "***Aggregate Sales Proceeds***"); and

      (b)    the aggregate appraised value (on an "As Is" basis) of the Premises as established by the appraisals obtained by Plaintiff prior to the commencement of this action (the "***Aggregate Appraised Value***").

In no event shall the disposition fee paid to the Receiver exceed $500,000.

In the event that (i) the receivership is terminated prior to the complete liquidation of Defendants' Assets, for any reason whatsoever, or (ii) the Aggregate Sales Proceeds do not exceed the Aggregate Appraised Value, then the Receiver shall not be entitled to a disposition fee.

US2008 2987503.5 51121-397765